140 N.J. Super. 399 (1976)
356 A.2d 418
TOWNSHIP OF ANDOVER, PETITIONER-APPELLANT,
v.
FRANK KYMER, GEORGE HAYEK, ALEXANDER LAZOR, FRANK E. MAZUY, II AND FREDERICK J. SCHUMAN, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 15, 1976.
Decided March 29, 1976.
*401 Before Judges ALLCORN, KOLE and ARD.
Mr. Barry N. Chase, attorney for appellant.
Messrs. Morris, Downing & Sherred, attorneys for respondents (Mr. Thomas J. Bain, of counsel and on the brief).
PER CURIAM.
The Division of Tax Appeals affirmed judgments of the county board of taxation. It held that, except for a portion of the lands (not subject to this appeal), all of the remaining approximately 200 acres owned by respondents (the taxpayer) were qualified for farmland assessment status for the tax year 1970 under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. The township appeals.
In 1970 the taxpayer purchased the Washer Farm consisting of approximately 210 acres. Shortly thereafter it was put on the market for resale. An agreement with the previous owners that the Swanson family farm the land was continued. No rental was received from the Swansons by the taxpayer. In 1968, 1969 and 1970 the Swansons grew and cut hay on the farm for a value of over $500 each year. The land subject to this appeal was used for no other purpose. Mrs. Swanson testified they grew hay on all the fields that were tillable, which amounted to about 100 acres. The township engineer estimated that between 52 and 70 acres *402 could be utilized for agriculture. The township tax assessor determined that only 41 acres qualified for farmland assessment. She had disallowed portions of the land that were wooded or swampy or consisted of rocky terrain, with no evidence of cultivation. She apparently qualified for such assessment only those areas where fields of hay were observed. The Division made no finding as to how many acres actually were in hay. In the view we take of this case that finding was not required.
On this appeal, as it did below, the township argues that (1) the lower farmland assessment should be limited to that part of the tract which is actually devoted to agricultural or horticultural use, and all acreage in a tract "does not qualify for farmland assessment solely because the portion farmed meets the minimum acreage and gross sales requirements under" the act, and (2) land cannot qualify for farmland assessment where "it is held primarily for speculation and the agricultural use is merely incidental thereto."
We affirm the judgments of the Division of Tax Appeals essentially for the reasons given by Judge Evers in his opinion below. We add, however, some additional comments.
The entire tract subject to this appeal is entitled to assessment as farmland under the statute even though only a portion thereof is actually being farmed as long as it may be said, as here, that (1) the tract basically is in fact dominantly devoted and dedicated to agricultural, and not to some other alien, principal use and (2) the statutory requirements as to area (five acres or more) and gross sales have been met  i.e., agricultural products produced thereon averaging at least $500 a year during the two-year period immediately preceding the tax year in issue (1970). The tract is thus "actively devoted" to agricultural use "for at least the 2 successive years immediately preceding" that tax year. N.J.S.A. 54:4-23.2; 54:4-23.3; 54:4-23.5; 54:4-23.7.[1] Compare *403 East Orange v. Livingston Tp., 102 N.J. Super. 512, 535-537 (Law Div. 1968), aff'd o.b. 54 N.J. 96 (1969).
In the present case, although the taxpayer may be holding the land for eventual resale or for speculation, the entire land, just as it was before the taxpayer's acquisition, is deemed to be in agricultural use  the production and sale of hay  since it is being "devoted to the production for sale of plants * * * useful to man, including but not limiting to: * * * grains and feed crops." N.J.S.A. 54:4-23.3. In this setting the satisfaction of the sales criteria of N.J.S.A. 54:4-23.5 renders the entire tract land actively devoted to agricultural use. See East Orange v. Livingston, supra.
Under these circumstances the special farmland tax treatment is not limited to that part of the tract shown to be used for an agricultural purpose  i.e., only the fertile or cultivated area of the farm. Woodland, wet areas and other acreage having a marginal value for agricultural or horticultural use may also be given such tax advantage, as long as it is part of, appurtenant to, or reasonably required for the purpose of maintaining, the land actually devoted to farm use, particularly where it has been part of the farm for a number of years. See N.J.S.A. 54:4-23.11; N.J.A.C. 18:15-6.2.[2]
In the present case no portion of the land was used for a purpose other than farming. The woodland and the swampy areas and the rocky terrain have been part of the farm and considered as such for many years. We cannot say that this marginal land was not part of or appurtenant to the farm, *404 or was not reasonably necessary to maintain the farm for agricultural use.
The construction we and the judge below have given to the act in the context of this case comports not only with its basic purpose but also that of the constitutional amendment authorizing its enactment. See N.J. Turnpike Auth. v. Washington Tp., 137 N.J. Super. 543, 546 (App. Div. 1975); East Orange v. Livingston Tp., supra, 102 N.J. Super. at 534-535. The primary goal was to save the family farm and to provide farmers with some economic relief by permitting farmlands to be taxed at a lower assessment as on-going farms rather than on any other basis. But other objectives, although incidental to this principal purpose, are also significant, such as encouraging the maintenance and preservation of open space and the beauty of the countryside.
These objectives may be largely frustrated if the act were to be construed as requiring cultivation of the kind of marginal land we have discussed in order to qualify for farmland assessment as part of a tract otherwise devoted to farm use. Marginal farmers and those with substantial sections of poor land would be severely hurt. Farmers whose advanced age may result in decreasing production would be forced to pay higher taxes despite falling income. Anyone holding the land with the hope of its increasing in value would be less likely to continue farming it without the tax benefit and may find it desirable to destroy or commercialize such woodlands as exist for a profit or to build on the land rather than keep it open.
Another objective of the act is furthered by the foregoing interpretation thereof: a consideration of the problems of the assessors. N.J. Turnpike Auth. v. Washington Tp, supra. Such problems are minimized to the extent that the Legislature has adopted a concrete formula to determine whether land is actively devoted to the statutory uses. Moreover, as the judge below indicated, to adopt the township's view, the assessor would have the "staggering undertaking" of extracting *405 from the land nonfertile areas, such as rocky, swampy or wooded lands. That task, requiring a thorough investigation of every part of each parcel subject to a farmland assessment application, or the alternative procedure of requiring the applicant to prove that every part of his land is actively devoted to agricultural or horticultural use is contrary to the legislative purpose as well as common sense.
We find no merit in the township's contention that since the taxpayer holds the land for resale, its primary use is land speculation, farming is only a secondary or incidental use and, accordingly, it does not qualify for farmland assessment. Here, unlike East Orange, supra, the production and sale of hay are not merely incidental to the dominant use of the land  there, as a water reserve. The land is not presently being used for any other purpose but farming. Even if the taxpayer were the farmer whose ultimate aim was to sell the land for another use in the near future, if the township's claim were accepted, he would not qualify for farmland assessment status. Accordingly, considering speculation as a dominant use would contravene the purpose of the statute  to tax land actively devoted to farming only at its value for agricultural use and not its value for a prospective higher use. The Legislature has incorporated the rollback tax provisions into the act, N.J.S.A. 54:4-23.8, in order to help protect municipalities from land speculation by providing, where there has been a change in use, for an additional tax on the land that takes into account the taxes that would have been payable had the land been assessed as other land in the taxing district in the year of change in use and in such of the two tax years immediately preceding in which the land was assessed and taxed as farmland. See N.J. Turnpike Auth. v. Washington Tp., supra, 137 N.J. Super. at 547; Report of Governor's Farmland Assessment Committee (March 20, 1963).
We recognize that another purpose of the statute  to further the interests of the municipalities  may not be fully served if production and sale of the required products *406 is minimal in nature and solely effected to qualify for special tax treatment, even though the land continues to be farmed as theretofore after a sale to one who is holding it for resale. But that is a legislative problem. It has been met, at least in part, by the 1973 amendment referred to in n. 1, supra, requiring increased sales of products where the land is more than five acres in area. Moreover, as indicated, it has thus far been satisfied by the rollback tax provisions when the use of the land is changed. Further legislative study and action in both of these areas may be desirable in order to preclude the original design of the act from being subverted in favor of those seeking a tax shelter without any true intention of actively devoting the land to the prescribed uses. We can do no more than recommend to the Legislature the study of the problem. See Avant v. Clifford, 67 N.J. 496, 517-518 (1975); State v. Community Distributors, Inc., 64 N.J. 479, 487-488 (1974).
Affirmed.
NOTES
[1] N.J.S.A. 54:4-23.5 was amended, L. 1973, c. 99, so that commencing with the 1973 tax year, the sales requisites for qualifying for farmland assessment were made more stringent where the land is more than five acres in area. This amendment supports our conclusion as to the significance of the sales requirements for farmland assessment purposes prior to the 1973 tax year.
[2] Recognition of woodland and wetland as qualifying for farmland assessment is supported by the 1973 amendment to N.J.S.A. 54: 4-23.5, referred to in n. 1, supra. For the first time it imposed minimum sales requirements with respect to woodland and wetland on any area above five acres.