166 N.J. Super. 90 (1979)
398 A.2d 1342
BESS WIESENFELD, APPELLANT,
v.
TOWNSHIP OF SOUTH BRUNSWICK, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1979.
Decided February 14, 1979.
*91 Before Judges CONFORD and PRESSLER.
Mr. John T. Lynch argued the cause for the appellant.
Mr. Michael S. Richmond argued the cause for the respondent.
The opinion of the court was delivered by PRESSLER, J.A.D.
Petitioner appeals from a judgment entered by the Division of Tax Appeals denying her application for farmland assessment pursuant to N.J.S.A. 54:4-23.1 et seq. for tax years 1972 and 1973 in respect of three separate tracts of land located in South Brunswick. We affirm.
The three tracts, denominated as the Richards Road tract, the Georges Road tract and the Fresh Ponds Road tract, are all woodlands for which the farmland assessment was sought on the basis of the alleged timber operations thereon conducted. The tax judge denied the applications based on her finding that petitioner had not borne her burden of proving that any of the tracts had produced the minimum *92 gross income prescribed by N.J.S.A. 54:4-23.5 as a condition for qualification for farmland assessment. She further found that the Fresh Ponds Road tract failed to qualify also because it had not been devoted to agricultural use for the two successive years prior to either of the tax years in question as required by N.J.S.A. 54:4-23.6. Our review of the record satisfies us that there is substantial credible evidence therein to support these findings. We accordingly decline to disturb them. See, e.g., Parkview Village Asso. v. Bor. of Collingswood, 62 N.J. 21, 34 (1972). And see R. 2:11-3(e)(1)(D).
Petitioner advances an alternative theory in support of her contention that even if the income produced by the Georges Road tract is inadequate by itself to justify the farmland assessment, that parcel is nevertheless entitled to farmland assessment status by reason of the fact that it is part of another existing and qualified farm. The Georges Road tract which is the subject of this appeal is comprised of Lot 14B in Block 30 consisting of 100.8 acres and Lot 6D in Block 87 consisting of 26.29 acres. These lots are contiguous to another parcel petitioner owns. That other parcel is a 181-acre tract, identified as Block 30, Lot 16Q, which was acquired by petitioner some five or ten years prior to her acquisition of the lots in question. Lot 16Q, which has regularly been accorded the benefit of the farmland assessment, consists of about 50 tillable acres, and about 130 acres of woodlands and wetlands. The tillable portion has been farmed over the years, most recently for rotating soybean and wheat crops, by a succession of farmers under arrangement with the petitioner. Despite the fact that the arable land is only approximately 28% of its total acreage, the entire parcel has been assessed as farmland. Petitioner argues that since Lot 14B and the Block 67 lot are contiguous to Lot 16Q, all three should be considered as a single unit, with the consequence that the woodlands of the Georges Road tract would be treated for tax purposes no differently from the woodland portion of *93 the farm itself. We are satisfied that the tax judge did not err in rejecting this contention.
The Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., although it generally defines qualifying agricultural use,[1] does not undertake to define qualifying woodlands and wetlands. That definitional problem is, however, addressed by the implementing regulations. Thus, N.J.A.C. 18:15-6.2(a)(6) specifically includes as an agricultural use land which is
Devoted to woodland appurtenant to land in agricultural or horticultural use and reasonably required for the purpose of maintaining the land in such use.
In Andover Tp. v. Kymer, 140 N.J. Super. 399, 403-405 (App. Div. 1976), we construed the applicable statute and administrative regulation as according presumptive qualification to woodland and wetland which is both legally and functionally part of a qualifying farm, which constitutes the marginal land area of that farm, and which has no independent productive use. As we there held
Under these circumstances the special farmland tax treatment is not limited to that part of the tract shown to be used for an agricultural purpose  i.e., only the fertile or cultivated area of the farm. Woodland, wet areas and other acreage having a marginal value for agricultural or horticultural use may also be given such tax advantage, as long as it is part of, appurtenant to, or reasonably *94 required for the purpose of maintaining, the land actually devoted to farm use, particularly where it has been part of the farm for a number of years. See N.J.S.A. 54:4-23.11; N.J.A.C. 18:15-6.2.
In the present case no portion of the land was used for a purpose other than farming. The woodland and the swampy areas and the rocky terrain have been part of the farm and considered as such for many years. We cannot say that this marginal land was not part of or appurtenant to the farm or was not reasonably necessary to maintain the farm for agricultural use. [at 403-404]
Our reasons for so holding were grounded in the public policy objectives which the Legislature evidently intended to advance in its enactment of the Farmland Assessment Act. It was thus our perception that
The primary goal [of the Act] was to save the family farm and to provide farmers with some economic relief by permitting farmlands to be taxed at a lower assessment as on-going farms rather than on any other basis. But other objectives, although incidental to this principle purpose, are also significant, such as encouraging the maintenance and preservation of open space and the beauty of the countryside.
These objectives may be largely frustrated if the act were to be construed as requiring cultivation of the kind of marginal land we have discussed in order to qualify for farmland assessment as part of a tract otherwise devoted to farm use. * * *
Another objective of the act is furthered by the foregoing interpretation thereof: a consideration of the problems of the assessors. * * * Such problems are minimized to the extent that the Legislature has adopted a concrete formula to determine whether land is actively devoted to the statutory uses. Moreover, as the judge below indicated, to adopt the township's view, the assessor would have the "staggering undertaking" of extracting from the land nonfertile areas, such as rocky, swampy or wooded lands. [at 404-405]
We are satisfied that the above-quoted rationale applies only where the disputed woodland is both legally and functionally part of the qualifying farm in question. That is, obviously, the rationale requiring the farmland status of the 130 wooded and wetland acres of Lot 16Q which are not arable. But we do not regard that rationale to be applicable where as here there is contiguously owned, separately acquired *95 woodland which has never functionally been part of the farm, which has not been integrated with it in any documentary manner[2] and on which there have been undertaken independent commercial operations not conducted for the benefit of the farm or the farmer but as a completely separate business activity. Thus, it is our view that where the woodland in question is not "part" of the farm within the rational of Andover Tp., supra, it can, if contiguous to the farm, qualify for the farmland assessment only if proved to be both appurtenant thereto and reasonably required for its maintenance. There were no such proofs here.
Affirmed.
NOTES
[1] N.J.S.A. 54:4-23.3 provides that

Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including but not limited to: forages and sod crops; grains and feed crops; dairy animals and dairy products; poultry and poultry products; livestock, including beef cattle, sheep, swine, horses, ponies, mules or goats, including the breeding and grazing of any or all of such animals; bees and apiary products; fur animals; trees and forest products; or when devoted to and meeting the requirements and qualifications for payments or other compensation pursuant to a soil conservation program under an agreement with an agency of the Federal Government. [L. 1964, c. 48 § 3]
[2] The lots here have always been the subject of separate tax bills and, except for tax year 1972, separate farmland assessment applications as well, supported by totally different farmland-assessment rationales. For tax year 1972, the petitioner did file one application for Lots 16Q and 14B (but not including the third contiguous lot). However, the supplemental data filed for that year by the taxpayer refers only to the Lot 16Q 181-acre farm. The petitioner also filed in support of the application Schedule F of this 1972 federal Income Tax Return, which indicated that the Lot 14B 100-acre tract was a separate and individual farm.