RIMM, J. T. C.
This local property tax matter involves the right of the taxpayers to farmland assessment treatment for the tax years 1978 and 1979. The property is one tax lot of 22.06 acres in Block 84, originally assessed for the tax year 1978 as Lot 1 with a regular assessment for 10.06 acres and as Lot IQ with a farm qualified assessment for 12 acres as follows:
*432 Lot 1 Lot IQ
Land $.14,500 $ 4,000
Improvements 26,800 -0-
Total $ 41,300 $ 4,000
By judgment' of the Ocean County Board of Taxation the assessment for 1978 was determined to be as follows:
Lot 1 Lot IQ
Land 5,500 $ 4,100
Improvements 26,800 -0-
Total 32,300 $ 4,100
The judgment was based on a determination that 21.06 acres of the tract qualified for farmland assessment and one acre did not. The township appealed from the 1978 county board judgment to the Division of Tax Appeals.
For 1979 the same original assessments were made, and both the taxpayer and the township appealed to the county board of taxation. The taxpayer sought the same farmland qualification adjudicated by the board for 1978. The township sought determinations that the property did not qualify as farmland at all and that the total assessment should be increased to $93,000. The county board judgment for 1979 was the same as the judgment for 1978. The township then filed a complaint with the Tax Court for 1979, seeking a judgment increasing the assessment. The matter before the Division was transferred' to the Tax Court, N.J.S.A. 2A:3A-26, and consolidated for trial with the 1979 matter, R. 4:38-1.
The undisputed evidence at trial indicated that the taxpayers qualify for farmland assessment treatment on the basis of their income, and the only issue before the court, is the area of Block 84, Lot 1 devoted to agricultural use under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq.
*433 The first witness was a field man employed in the township assessor’s office who testified that defendants’ farm is located at the intersection of Leesville Road and Pleasant Grove Road in a rural residential area. The lot is irregular in shape, with 1178 feet of frontage on Pleasant Grove Road and 1028 feet of frontage of Leesville Road. During his testimony a hand-drawn diagram prepared by the witness was admitted into evidence. Referring to the diagram the witness testified that there was a 3.2 acre soybean field in the Pleasant Grove Road vicinity. In the Leesville Road area of the tract there were located two chicken coops, an egg house, a pump house, a .44-acre vegetable field, a shed and the farmhouse. The witness testified that he had made careful measurements of the fields and the structures and, including only the actual dimensions of the structures, the area of the two fields and the structures devoted to agricultural use totaled 4.05 acres. He further testified that he regarded defendants as egg farmers who sold eggs, chickens and vegetables and who rented the soybean field to the adjoining farmer. On examination by the court the witness conceded that at least one-half acre around the shed was used for farm purposes and that an additional area of from one-half acre to three-quarters of an acre around the chicken coops was also used for farm purposes. Finally, the witness described defendants’ activities and their use of a tractor and “wagon” on these areas. In response to questions on cross-examination by one of the defendants, the witness also conceded that there was a disposal pit on the farm used in connection with the defendants’ chicken-raising and egg-farming activities. No area was given for this pit. This witness also testified that approximately 14 acres of the entire 22.06 acres of the lot are wooded and swampy and could not be used for any purpose other than as woodland.
Defendants called as their first witness the Ocean County Agricultural Agent. He testified that defendants are primarily commercial egg producers and have been so at this location for approximately 20 years. He considered the tract to be a farm, a “viable entity” as he described it, with the open space between *434 the coops a part of the farming operation and the entire tract necessarily devoted to farm use because of the manure odor. The wooded and wet areas acted as a buffer area between defendants’ activities and the surrounding roads and lots.
Defendant wife testified that she and her husband have lived on and farmed the property since 1959; they have 4,500 chickens; they use trucks on the farm to transport both chickens and feed, and they dispose of the chicken manure on their farm tract, but at some distance from the coops. She also claimed that, in addition to the chicken-raising and egg-farming activities, four acres of the farm were in soybeans and vegetables, and not 3.64 acres as testified to by the assessor’s field man.
The original testimony of the field man, in which he testified that he included only the land actually under the farm structures as farmland, results from a misconception of N.J.S.A. 54:44-23.11. That section of the Farmland Assessment Act of 1964 provides that, in determining the total area of land actively devoted to agricultural use, “there shall be included the area of all land under bams, shed, silos, cribs, greenhouses and like structures.” The statute does not exclude from the area of land actively devoted to agriculture the land surrounding such structures, and if such surrounding land is devoted to such use it shall be included in the determination of the total area of land actively devoted to agricultural use. In determining what constitutes “devoted to agricultural” use, this court relies on East Orange v. Livingston Tp., 102 N.J.Super. 512, 246 A.2d 178 (Law Div. 1968), aff’d 54 N.J. 96, 253 A.2d 546 (1969). There the court said:
In ascertaining the meaning of a statute, the language employed should be given its ordinary and common significance .... the term “devote” must be understood in its usual significance and in a manner which will sensibly effectuate the salient statutory objective of providing tax relief with respect to lands committed to farming.
The verb “devote” denotes variously “1.... to set apart or dedicate by a solemn act; to consecrate; ... 2. to give up wholly; to addict; to direct the attention of wholly or chiefly”. A synonym is “to set apart” or “to appropriate”. *435 An equivalent verb is “to dedicate”. Webster’s New International Dictionary, 715 (1948 ed.), 715. [at 536-37; emphasis supplied]
Based on the field man’s testimony and that of the defendant wife and the agricultural agent, the court finds that the 1 to lVi additional acres of land surrounding the chicken coops and the shed were used for farm purposes and for no other purpose. These areas were given up wholly to agricultural use in the raising of chickens and the production of eggs. Land devoted to the production for sale of poultry and poultry products is deemed to be in agricultural use. N.J.S.A. 54:4-23.3. The court further finds, based on the field man’s testimony of 4.05 acres used for fields and actual farm structures, that at least 5.05 acres of this lot is actively devoted to agricultural use, namely, the production for sale of grain, vegetables and poultry products. N.J.S.A. 54:4-23.3 and 54:4-23.4. The balance of the tract, except for the one acre “under ... and actually used in connection with the farmhouse,” is also part of the farm and qualifies for farmland assessment. This entire lot is, as described by the county agricultural agent, a viable entity.
The complaining party in a matter in the Tax Court has the burden of overcoming the presumption of correctness in favor of a county tax board judgment. This presumption stands until sufficient competent evidence is presented to overcome it. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952); Spiotta Brothers v. Mine Hill Tp., 1 N.J.Tax 42 (Tax Ct. 1980), and Califon Bor. v. Stonegate Properties, Inc., 2 N.J. Tax 153 (Tax Ct. 1981). The testimony on behalf of the township is not sufficient and competent to overcome the presumption of correctness of the county tax board judgment adjudicating that the subject property is entitled to farmland assessment treatment. On the contrary, the court finds that at least 5.05 acres, and perhaps 5.30 acres, are actively devoted to agricultural use. With regard to the balance of the tract, there is a fair preponderance of evidence that the woodland and swampy area of the lot are a part of the farm. Rothman v. Hackensack, 1 N.J.Tax 438 (Tax Ct. 1980).
*436 In Andover Tp. v. Kymer, 140 N.J.Super 399, 356 A.2d 418 (App.Div.1976), the court, in considering a tract of approximately 200 acres, of which only about 100 acres were tillable and farmed, held that the entire tract was entitled to farmland assessment as long as (1) the tract was in fact dominantly devoted to agricultural use and not to some Other principal use, and (2) the statutory requirements of area and income had been met. Originally the assessor had disallowed farmland qualification for portions of the tract that were wooded or swampy or consisted of rocky terrain with no evidence of cultivation. The court said that it reached its conclusion even though the taxpayer might have been holding the land for eventual resale or for speculation, a circumstance not even in the present case in which defendants are farmers, have been farming the subject property for about 20 years and apparently intend to remain on their land as farmers. As in Kymer, the woodland and swampy areas on the subject farm should receive farmland qualification because they are a part of, appurtenant to or reasonably required for the purposes of maintaining the area devoted to farm use. Additionally, no portion of the land was used for a purpose other than farming and the areas have been part of the farm and considered as such for many years. Indeed, the additional acreage has been legally and functionally a part of the farm tract for some years. Cf. Wiesenfeld v. S. Brunswick Tp., 166 N.J.Super. 90, 398 A.2d 1342 (App.Div.1979) (farmland assessment denied to contiguously owned, separately acquired woodland tracts which had never functionally been part of the farm, which had not been integrated with it in any documentary manner and on which there had been undertaken independent commercial operations, not for the benefit of the farm or the farmer, but as a completely separate business activity).
Besides the rationale of Kymer, the entire 21.06 acres are entitled to farmland assessment qualification in accordance with Calif on Bor. v. Stonegate Properties, Inc, supra. There the taxpayyer contended that the marginal appurtenant land was reasonably *437 required for the purpose of maintaining the land actually devoted to farm use because the marginal land acted as a buffer between the horse-raising agricultural activities on the farm and the activities carried on outside the farm. In the present case the marginal wooded and swampy area is used as a manure disposal area and as a buffer area between defendants’ chicken farming activities and the surrounding roads and lots. The buffer “is not a mere convenience but an absolute necessity to the proper operation of the [chicken] farm.” Id. 2 N.J.Tax at 166.
The primary goal of N.J.Const. (1947) Art. VIII, § I, par. 1(b), and the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., is to save the family farm and to provide farmers with some economic relief by permitting farmland to be taxed at a lower assessment. Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 67, 386 A.2d 1357 (App.Div.1978). Since the Farmland Assessment Act of 1964 was enacted for the purpose of countering the adverse impact of property taxation on agriculture, Terhune v. Franklin Tp., 107 N.J.Super. 218, 220, 258 A.2d 18 (App.Div.1969), failing to find that the property of the defendants in this matter qualifies for farmland assessment would be contrary to the legislative purpose. A determination that their property does qualify is squarely within the purpose of the Constitution and the statute.
The Clerk of the Tax Court will enter judgments for the tax years 1978 and 1979 that one acre of the defendants’ land, designated as Lot 1 for assessment purposes, and 21.06 acres of the defendants’ land, designated as Lot IQ for assessment purposes, are assessed as follows:
Lot 1 Lot IQ
Land $ 5,500 $4,100
Improvements 26,800 -0-
Total $32,300 $4,100