CONLEY, J.T.C.
This action presents an unusual farmland assessment issue involving honeybees and the production of honey. Plaintiff filed an application with the Frenehtown tax assessor seeking to have a tract of land assessed as qualified farmland for the tax year 1983. The basis of the claim was that the land was *560 actively devoted to the production of honey through the efforts of a professional beekeeper and his bees. The assessor denied the application on the grounds that beehives were located on only a small portion of plaintiffs land and that in fact the bees did not gather their nectar from that property. The Hunterdon County Board of Taxation affirmed the assessor’s determination.
The Farmland Assessment Act of 1964 provides for a reduced property tax assessment for lands actively devoted to agricultural or horticultural use. N.J.S.A. 54:4-23.1 et seq. The raising of bees and production of honey are clearly considered an agricultural use because the Legislature provided specifically that “[ljand shall be deemed to be in agricultural use when devoted to the production for sale of ... bees and apiary products.” N.J.S.A. 54:4-23.3.
There are various other specific statutory criteria that must be met before land may be qualified as farmland for property tax assessment purposes. See N.J.S.A. 54:4-23.5; Kugler v. Wall Tp., 1 N.J.Tax 10 (Tax Ct.1980). With regard to these, there is no dispute that plaintiff’s five-acre lot is large enough to qualify for farmland assessment, that 16 to 20 “very active” beehives were on the property during the requisite time, and that the hives produced more than enough honey, sold at both wholesale and retail, to satisfy the income requirement of the statute.
The sole issue is whether all five acres of the subject property can be said to have been “devoted” to honey production within the intent of the act. It is important to note in this connection that all of the beehives were located in an area of the property that was approximately 40 feet by 50 feet in size, almost in a corner of the five-acre tract. It is also important to note that a landowner is not entitled to farmland assessment unless “at least” five acres of the property are actively devoted to agricultural or horticultural use. Checchio v. Scotch Plains Tp., 2 N.J.Tax 450 (Tax Ct.1981).
*561 Plaintiff described his property as flat, vacant land on which there were woods, underbrush and wildflowers. He believed that much of the property had at one time been an apple orchard, but it had become overgrown with cedar trees. He was unsure whether any apple trees still blossom.
Plaintiff called his beekeeper as an expert witness. The beekeeper derives his livelihood from bees, maintaining beehives on approximately 30 properties, including plaintiff’s. He stated that the trees on the subject property were ash, black walnut and locust. He had not seen any apple trees on the property; however, his visits to the tract had been limited to the immediate vicinity of his hives. The beekeeper testified that although all green plants produce nectar which can be used by bees to make honey, trees such as exist on plaintiff’s property are not a primary nectar source. In his opinion the bees more likely obtained nectar from the kind of bramble underbrush found on the property.
This witness also stated that any beehive has a three-mile radius within which its 50,000 to 75,000 bees forage. Primarily because of this, the beekeeper felt that a property owner could not cultivate any specific crops or plants, even clover or wildflowers, to improve either the quantity or the quality of the honey produced in his beehives.
Defendant’s tax assessor visited the property in the company of the county tax administrator, a hobbyist beekeeper for the past 40 years. The point of their inspection was to examine the vegetation on the property. They each testified that the trees they observed were predominantly black walnut, red ash and cedar, with an undergrowth of wild grapevines. They each stated that none of these kinds of vegetation would be a primary source of nectar for honeybees. On the day of their visit, they saw a multitude of bees fly from the hives on plaintiff’s property and proceed upward and away from the property rather than into the lot.
I conclude from the testimony that plaintiff’s land is in a relatively wild state, not having been cultivated for any pur *562 pose. I find that the bees from the hives on plaintiffs property gather some nectar from that property; however, to a much greater extent they gather it from a wider area, up to as far as three miles away in all directions from the property. Finally, I conclude that the bees would produce just as much honey of the same type if they did not forage at all on plaintiffs land. The essence of this conclusion is that the contribution of plaintiffs land to the production of honey is de minimis.
There does not appear to be any applicable case law dealing with bees and honey production in any state that has a farmland assessment statute. The most relevant analysis of our act I have found is in East Orange v. Livingston Tp., 102 N.J.Super. 512, 246 A.2d 178 (Law Div.1968), aff’d 54 N.J. 96, 253 A.2d 546 (1969). In that case, Judge (now Justice) Handler concluded that certain lands were not “devoted” to an agricultural use within the intent of the Farmland Assessment Act even though certain of the statutory criteria had apparently been satisfied, including the gross sales requirement. The court placed great emphasis on the verb “devote” as used in the act, saying:
In brief, the term “devote” must be understood in its usual significance and in a manner which will sensibly effectuate the salient statutory objective of providing tax relief with respect to lands committed to farming.
The verb “devote” denotes variously "1. ... to set apart or dedicate by a solemn act; to consecrate; ... 2. to give up wholly; to addict; to direct the attention of wholly or chiefly.” A synonym is “to set apart” or “to appropriate.” An equivalent verb is "to dedicate.” [at 536-537, 246 A.2d 178]
In East Orange the court held that the lands in question could not be “devoted” to agricultural uses because those uses “must be regarded as subservient to [the land’s] dominant use as a public water supply.” Id. at 537, 246 A.2d 178. Elaborating, the court said:
In no sense, therefore, can it be said that the East Orange Water Reserve is devoted, that is, committed, or dedicated, or set apart or appropriated, or given up wholly or chiefly to the production for sale of agricultural products of any kind within the meaning of the Farmland Assessment Act of 1964. To the contrary, it is devoted to the purpose for which it was originally acquired by East Orange, namely, for the purpose and for the protection of a public water supply. [Ibid.]
*563 The circumstances in the present case differ from those involved in East Orange because plaintiffs property here cannot be said to be devoted to another or an alternative use. Thus, there is no need to invoke the test of predominant use developed in East Orange. See Green Pond Corp. v. Rockaway Tp., 2 N.J.Tax 273, 287-289 (Tax Ct.1981), aff’d 4 N.J.Tax 534 (App.Div.1982). Nonetheless, the significance attributed to the term “devote” in East Orange is instructive in the context of this case.
There is a connotation throughout the definition of the term as quoted above that something affirmative must be done “to devote” one thing to something else, as in the primary definition “to set apart or dedicate.” It is certainly true as well that an underlying theme of the Farmland Assessment Act is that something affirmative must be done to the land in order for it to qualify for the benefit of a reduced property tax assessment. This is illustrated by the following passage from Jackson Tp. v. Paolin, 181 N.J.Super. 293, 3 N.J. Tax 39, 437 A.2d 344 (Tax Ct.1981):
In the present case the proofs demonstrate that the subject property had been a fairly typical small family farm for many years, not unlike the farm in Andover Tp. v. Kymer, [140 N.J.Super. 399, 356 A.2d 418], but that as the farmer grew old and became disabled his farming activities decreased. Applying well-established principles as set forth in the above cases, I am constrained to find from the evidence in this case that as of 1978 Lot 84 was not “actively devoted to agricultural use” within the intendment of the Farmland Assessment Act. I find that Paolin did not plant corn in 1978 and that he never harvested the corn he had planted in 1977. Paolin’s fields had been taken over by weeds in 1978 and could no longer be characterized as hay fields. The value of any cutting from the fields was at best minimal. The apples produced on Paolin’s trees were stunted and wormy from lack of pruning and spraying. The cutting of firewood was very occasional and not part of a farming effort. In short, I find that there was insufficient farming activity on the property in 1978 for the property to have qualified for farmland assessment and therefore it should not have received farmland assessment for that year. [Id. N.J. Tax at 46]
See also Princeton Research Lands, Inc. v. Upper Freehold Tp., 4 N.J.Tax 402, 411 (Tax Ct.1982).
The Farmland Assessment Act is a variation from the standard of assessment uniformity otherwise required by the State Constitution. Centex Homes of N.J., Inc. v. Manalapan Tp., 4 *564 N.J.Tax 599 (Tax Ct.1982). Qualified farm property is assessed at only “that value which such land has for agricultural or horticultural use." N.J.S.A: 54:4-23.2; emphasis supplied. Virtually all other property must be assessed according to the price at which it would sell “at a fair and bona fide sale by private contract.” N.J.S.A. 54:4-23. Farmland assessments are extraordinary, therefore, because they are based upon the value of a property for a particular kind of use whereas other assessments are based upon market value.
I do not find from the evidence in this case that plaintiffs property was “devoted” to the production of honey in the sense intended by the Farmland Assessment Act. The fact that bees occasionally forage for nectar in the wilds of plaintiff’s woodlot does not mean that the land is “devoted” to the production of honey. Plaintiff’s land is really “devoted” to nothing at all. Nor is the property “used” in any traditional sense for the production for sale of “bees and apiary products” as required by N.J.S.A. 54:4-23.3. The land is in a relatively wild, or unused, state. It has not been cultivated or tended in any way to promote an agricultural use. In fact, the bees whose hives are located on the property would produce honey just as well if the entire property had been covered with blacktop because they gather nectar from areas far beyond the borders of this particular tract.
The most that can be said for plaintiff’s claim is that honey was produced on a small portion of the property. This is similar to the finding in Checchio v. Scotch Plains Tp., supra, that less than two acres of the subject property had been devoted to the raising of pachysandra. 2 N.J.Tax at 454. The Farmland Assessment Act was not intended to provide the benefit of a reduced tax assessment for property under these circumstances.
For the reasons set forth in this opinion, I conclude that plaintiff’s property did not qualify for farmland assessment for 1983. The Clerk of the Tax Court will enter judgment dismissing plaintiff’s complaint.