ANDREW, J.T.C.
In this case plaintiffs assert that the Middlesex County Board of Taxation wrongfully denied farmland assessment for 6.61 acres of woodland property for the tax year 1985. The property in question consists of Block 4.05, Lots 111, 112 and 113 on the North Brunswick tax map. Lots 112 and 113 together comprise 3.9 acres, and Lot 111 consists of 2.71 acres.
*3 The following uncontroverted facts were revealed at trial. Plaintiffs Jane Senoff and Minda Shein are sisters and are married to plaintiffs Michael Senoff and Robert J. Shein. In 1974 Samuel and Mary Hamelsky, the parents of Jane Senoff and Minda Shein, intended to make a gift of Block 4.05, Lots 111, 112 and 113 to their daughters and respective husbands, the four plaintiffs herein.
Lot 112 was conveyed by the Hamelskys to plaintiffs by a deed dated November 18, 1974 and duly recorded on December 6, 1974 in the Middlesex County Clerk’s Office. Lot 113 was conveyed by the Hamelskys to plaintiffs by a second deed dated September 12, 1974 and also duly recorded in the county clerk’s office on September 17, 1974.
By a third deed dated September 12, 1974 and recorded September 17, 1974, the Hamelskys purportedly conveyed Lot 111 to plaintiffs. However, as was subsequently learned, title to Lot 111 was not in the Hamelskys but was in the entity identified as Esham Corp., a corporation then totally controlled by the Hamelskys. Apparently someone noted this discrepancy thereafter because there was a deed dated October 24, 1975 between plaintiffs, as grantors, and Esham Corp., as the grantee, which, based on the recital in the deed, was supposed to remove any cloud on title that may have been caused by the deed that attempted to transfer title to Lot 111 (in the name of Esham Corp.) to plaintiffs herein by the Hamelskys.
At trial, plaintiff Michael Senoff indicated that the purpose of the October 24, 1975 deed was to remove any doubt that the four plaintiffs had title to Lot 111. Needless to say, it did not have that effect since it was clear that record title to Lot 111 was still in Esham Corp.
The record reveals that at the time of the October 24, 1975 deed, the four plaintiffs were the sole directors and shareholders of Esham Corp. and to all intents and purposes Esham Corp. was an inactive entity.
Michael Senoff testified that, from October 24,1975 until the North Brunswick tax assessor notified them to the contrary, *4 plaintiffs believed that title to Lot 111 was in the four plaintiffs. Upon learning of the fact that title to Lot 111 was in Esham Corp. and that their farmland assessment was in jeopardy, a deed was prepared in July 1985 transferring title to Lot 111 from Esham Corp. to the four plaintiffs. The record further discloses the four plaintiffs paid the local real property taxes on all of the lots including Lot 111 and that the tax bills on all lots including Lot 111 reflected the names of the individual plaintiffs, not Esham Corp.
According to the uncontroverted testimony of Michael Senoff, the property has been assessed as farmland since at least 1980 and also at least since 1980 the property has been operated as an economic and functional unit. As a matter of fact, the tax assessor had granted farmland assessment for the tax year 1985, but, upon subsequently learning that record title to Lot 111 was in the name of Esham Corp., she filed a petition of appeal on behalf of North Brunswick Township with the Middlesex County Board of Taxation for the purpose of correcting an allegedly erroneous grant of farmland assessment. The reason for the appeal as reflected in the petition itself was solely because title to Lot 111 was in Esham Corp. while title to Lots 112 and 113 was in the four plaintiffs. The county board reversed the grant of farmland assessment and imposed an assessment based on the property’s market value as advanced by the assessor.
The parties have stipulated that in the event the land in question qualified for farmland assessment, the assessment for the entire 6.61 acres would be in accordance with the original assessment, namely $3,000.
Defendant concedes that, except for the lack of single legal ownership, the entire 6.61 acres would qualify for farmland assessment. However, defendant maintains that, even though plaintiffs cultivated all 6.61 acres, because they owned only 3.9 acres, plaintiffs have not satisfied the five-acre requirement of the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. Plaintiffs respond on two grounds that they did in fact *5 satisfy the five-acre requirement. Firstly, they contend that, regardless of plaintiffs’ and Esham Corp.’s separate legal ownership of the land, the county board should have aggregated the entire 6.61 acres when it considered the five-acre requirement. Secondly, they contend that, because Esham Corp. is merely their alter ego, plaintiffs had beneficial ownership of the entire 6.61 acres and therefore satisfy the five-acre requirement.
In support of their first contention, plaintiffs argue that (1) use and not ownership of land determines eligibility for farmland assessment, (2) granting farmland assessment here would promote “the purpose” of the Farmland Assessment Act, namely, the retention of open spaces and (3) because the Tax Court has, in a number of opinions, used the words “owner” and “taxpayer” interchangeably, plaintiffs, and not Esham Corp., “own” the entire 6.61-acre tract.
Defendant’s response to plaintiffs’ first contention is threefold. Initially, it relies upon the Handbook for New Jersey Assessors (1980 ed.) which states:
At least 5 acres of land must be included in one ownership in order to qualify under the Farmland Assessment Act. [§ 504.24 at V-33; emphasis supplied]
Secondly, it argues that granting farmland assessment to plaintiffs would prevent assessors from separately assessing individual owners pursuant to N.J.S.A. 54:4-23. Thirdly, defendant asserts that requiring the assessor here to aggregate acreage under separate legal ownership would effectively require the assessor to disregard the corporate form of Esham Corp.
In response to plaintiffs’ second contention that Esham Corp. was their alter ego, defendant argues that, because there has been no showing of fraud or injustice, the court ought not “pierce the corporate veil” and disregard Esham Corp.’s legal ownership of Lot 111.
The language of the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq., supplies ample support for plaintiffs’ first assertion that, for purposes of farmland assessment, use, and not ownership, controls. The act provides in part:
*6 the value of land, not less than 5 acres in area, which is actively devoted to agricultural or horticultural use ... shall, on application of the owner, and approval thereof as hereinafter provided, be that value which such land has for agricultural or horticultural use. [N.J.S.A. 54:4-23.2; emphasis supplied] [1]
The act further defines “agricultural use”:
Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including ... trees and forest products. ... [N.J.S.A. 54:4-23.3; emphasis supplied]
and “actively devoted”:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products thereon ... have averaged at least $500.00 per year. ... [N.J.S.A. 54:4-23.5; emphasis supplied]
Also, “rollback” or additional taxes are imposed when:
land ... in agricultural ... use ... is applied to a use other than agricultural____ [N.J.S.A. 54:4-23.8; emphasis supplied; see also N.J.S.A. 54:4-23.16]
Finally and most important:
Continuance of valuation, assessment and taxation under this act shall depend upon continuance of the land in agricultural or horticultural use and compliance with the other requirements of this act and not upon continuance in the same owner of title to the land. Liability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural or horticultural use, under the conditions prescribed in this act. [N.J.S.A. 54:4-23.15; emphasis supplied]
Preferential farmland assessment thus is contingent on use, and not on ownership. Essentially, when a taxpayer “uses” land five acres in area for agricultural purposes, he becomes entitled to preferential assessment, and when the “use” changes, the land is subject to rollback taxes. It follows that a change in legal ownership or title to the land does not *7 affect farmland assessment. Thus, it is not surprising that the courts have consistently held that, for purposes of farmland assessment, actual use is the controlling factor.[2]
Moreover, while the Farmland Assessment Act repeatedly emphasizes use, the act nowhere mentions any requirement of single legal ownership for land totally within one taxing district. See N.J.S.A. 54:4-23.6; cf. N.J.S.A. 54:4-23.18. Although the act contains the word “owner” in its singular form,[3] the Legislature clearly intended the act to apply to land owned by more than one individual. According to N.J.S.A. 1:1-2:
Whenever, in describing or referring to any person, party, matter or thing, any word importing the singular number or masculine gender is used, the same shall be understood to include and to apply to several persons or parties as well as to one person or party and to females as well as males, and to bodies corporate as well as individuals, and to several matters and things as well as one matter or thing.
*8 Indeed, when the Legislature wanted in special circumstances to impose an additional requirement of single legal ownership, it did so expressly. N.J.S.A. 54:4-23.18 states:
Where contiguous land in agricultural or horticultural use in one ownership is located in more than one taxing district, compliance with the 5-acre minimum area requirement shall be determined on the basis of the total area of such land and not the area which is located in the particular taxing district, [Emphasis supplied; see also N.J.A.C. 18:15-13.1]
In response to plaintiffs, defendant correctly observes that the Handbook for New Jersey Assessors, requires for farmland assessment that at least five acres of land be under “one ownership.” However, the legislative and judicial emphasis on actual use, and the courts’ focus on economic and functional unity, authoritatively override the assessors handbook. Issued by the Division of Taxation to assist assessors in carrying out their duties, the handbook expresses the Division’s interpretation of current law and is subject to, rather than binding upon, judicial and legislative authority.
Secondly, defendant counters that requiring the assessor here to aggregate acreage under separate legal ownership would require the assessor to disregard Esham Corp.’s corporate form. Defendant’s argument, however, does not address the issue of whether separate legal ownership precludes farmland assessment. The decision to aggregate in and of itself has no bearing on whether the assessor should recognize Esham Corp.’s corporate form. Indeed, it was defendant’s recognition of a separate corporate form that initially raised the question of aggregation.
Finally, defendant argues that granting farmland assessment here would prevent the assessor from separately assessing individual owners pursuant to N.J.S.A. 54:4-23. Again, however, the issue is not whether to assess plaintiffs' and Esham Corp.’s lots separately, but whether, separately assessed or not, land under separate legal ownership can qualify for farmland assessment.
In further support of their first contention, plaintiffs also argue that emphasis. on use as opposed to ownership *9 furthers the policy considerations behind the Farmland Assessment Act, namely, the retention of open space. Appointed to develop recommendations with respect to farmland assessment, the Governor’s Committee on farmland assessment considered the following objectives:
(a) the desirability of continuing the family farm in New Jersey and the farmer’s problem; (b) the interests of the municipalities and the problems of the assessors; and finally, (c) the interests of all the people of New Jersey in maintaining “open” space, the beauty of our countryside and in the availability of agricultural products fresh from the farm. [Report of the Governor’s Farm Land Assessment Committee (March 20, 1983) ]
Unlike a requirement of single legal ownership, the requirement of actual use not only promotes open space and the beauty of the countryside, but also increases the availability of agricultural products.[4] Consequently, even though the land here is not under single legal ownership, granting farmland assessment to plaintiffs would promote the purposes of the Farmland Assessment Act.[5]
In addition, the courts have recognized that in some instances, solely by virtue of its relationship to qualifying farmland, land may qualify for farmland assessment. Even if not actual *10 ly cultivated, and consequently not meeting income and other requirements for farmland assessment, “marginal” land may qualify if “part of, appurtenant to, or reasonably required for the purpose of maintaining, [qualifying farmland] ... particularly where it has been part of the farm for a number of years.” Andover Tp. v. Kymer, supra, 140 N.J.Super. at 403, 356 A.2d 418; Hinck v. Wall Tp., supra, 3 N.J.Tax at 103; Wiesenfeld v. South Brunswick Tp., 166 N.J.Super. 90, 94, 398 A.2d 1342 (App.Div.1979); Califon v. Stonegate Properties, 2 N.J.Tax 153 (Tax Ct.1981), and Jackson Tp. v. Hamburger, 2 N.J.Tax 430 (Tax Ct.1981). In so holding, the court in Wiesenfeld emphasized the importance of functional unity. Id. at 166 N.J.Super. at 94-95, 398 A.2d 1342.[6]
In sum, since Lot 111 forms an economic and functional unit with Lots 112 and 113, and for the other reasons expressed, I find that separate legal ownership does not here preclude aggregating acreage to meet the requirements of the Farmland Assessment Act. Consequently, I need not consider plaintiffs’ additional arguments.
In arriving at this conclusion I have been mindful that, because farmland assessment is akin to tax exemption, the Farmland Assessment Act should be strictly construed against the party seeking preferential assessment. Princeton Univ. Press v. Princeton, 35 N.J. 209, 172 A.2d 420 (1961), and Califon v. Stonegate Properties, supra, 2 N.J.Tax at 163. However, I am equally mindful that, in construing tax exemption statutes, the Tax Court has followed a rule of reasonable construction and refused to allow a “strict construction” or rigid interpretation to defeat an “evident legislative design” or “apparent legislative purpose.” New Brunswick v. Rutgers *11 Community Health Plan, 7 N.J.Tax 491, 498 (Tax Ct.1985), and Nu Beta Alumni Ass’n v. New Brunswick, 7 N.J.Tax 379, 384 (Tax Ct.1984), aff’d o.b. per curiam, 7 N.J.Tax 658 (App. Div.1985). See also Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956).
In light of the foregoing, I conclude that Block 4.05, Lots 111, 112 and 113 should be assessed as farmland for the tax year 1985. Since the parties have agreed upon the total farmland assessment of $3,000 but not upon the appropriate assessment for the individual lots and the tax assessor may wish to reflect the assessments on an individual basis, the parties are directed to submit agreed upon individual assessments for the individual line items within ten days. R. 8:9-3. If the parties are unable to agree they are directed to follow the provisions of R. 8:9-4.

The statutory language tracks the provision of the state constitution regarding farmland assessment which provides the same emphasis on use.
The Legislature shall enact laws to provide that the value of land, not less than 5 acres in area, which is determined by the assessing officer of the taxing jurisdiction to be actively devoted to agricultural or horticultural use and to have been so devoted for at least the 2 successive years immediately preceding the tax year in issue, shall, for local tax purposes, on application of the owner, be that value which such land has for agricultural or horticultural use. [N.J. Const. (1947), Art. VIII, § 1, par. 1(b)]

See Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 68, 386 A.2d 1357 (App.Div.1978) (intent of the Farmland Assessment Act is to tax land devoted to agricultural use only at its value for that use and not at its value for an intended or prospective higher use); Andover v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976) (although taxpayer may be holding the land for eventual resale or for speculation, because it was in agricultural use and was actually “devoted to the production for sale of plants," the land was entitled to farmland assessment); N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 551, 350 A.2d 69 (App.Div.1975) (change in use and not change in ownership determines whether land continues to be eligible for farmland assessment); Terhune v. Franklin Tp., 107 N.J.Super. 218, 258 A.2d 18 (App.Div.1969) (even if it constitutes part of the minimum lot size for the farmhouse, because actually used for agriculture, the land was entitled to farmland assessment; Centex Homes of N.J., Inc. v. Manalapan, 4 N.J.Tax 599 (Tax Ct.1982), certif. granted, 94 N.J. 517, 468 A.2d 175 (1983), remanded to App.Div. 95 N.J. 218, 470 A.2d 433 (1983), app. dism. upon stipulation May 24, 1984) (because farmland assessment depends on actual or current use, municipal law imposing rollback taxes upon preliminary subdivision, site plan or planned development approval violates preferential treatment afforded farmland in Art. VIII, § 1, p. 1(b), of the New Jersey Constitution), and Hinck v. Wall Tp., 3 N.J. Tax 96 (Tax Ct.1981) (even if transferred to a new owner or split off from the farm property, so long as it continues in farmland use, land may retain its farmland status).

 See N.J.S.A. 54:4-23.2.

 See Urban Farms, Inc. v. Wayne Tp., supra, 159 N.J.Super. at 67, 386 A.2d 1357; East Orange v. Livingston Tp., 102 N.J.Super. 512, 532-534, 246 A.2d 178 (Law Div.1968), aff'd o.b. per curiam, 54 N.J. 96, 253 A.2d 546 (1969); Andover Tp. v. Kymer, supra, 140 N.J.Super. at 404, 356 A.2d 418, and N.J. Turnpike Auth. v. Washington Tp., supra, 137 N.J.Super. at 546, 350 A.2d 69.

 A requirement of single legal ownership, moreover, would not significantly deter land speculators who typically deal with tracts in excess of five acres. But even if such a requirement would deter speculators, the Legislature has decided that the benefits of farmland assessment outweigh the risk of increased speculation:
the framers of the constitutional amendment realized that it would not prevent speculation and that speculators could benefit from the preferential treatment accorded by the farmland assessment program. The Governor’s Committee made a conscious policy decision that eligibility would be premised solely on the land qualifications. If land was utilized for agricultural or horticultural use as outlined in the constitutional amendment and the implementing legislation, preferred valuation, assessment and taxation would follow. [Centex Homes of N.J., Inc. v. Manalapan Tp., supra, 4 N.J.Tax. at 616; emphasis supplied]

Even though not actually cultivated, marginal lands can qualify for preferential assessment. Consequently, in order to prevent abuse of the Farmland Assessment Act, the courts have imposed on "marginal lands" the additional requirement of legal unity. See Wiesenfeld, supra at 94, 398 A.2d 1342; Bass River Tp. v. Hogwallow, 1 N.J.Tax 612, 618 (Tax Ct.1980), aff'd o.b. per curiam 182 N.J.Super. 584, 442 A.2d 1055 (App.Div.1982), and Jackson Tp. v. Hamburger, 2 N.J.Tax 430, 436 (Tax Ct.1981).