AXELRAD, J.T.C.
At issue in this local property tax proceeding is the eligibility of a 6.33-acre tract of land for assessment pursuant to the provisions of the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 to - 23.23. The subject parcel is located on Navesink River Road in Middletown Township and was designated as Block 469, Lot 1 and Block 840, Lot 69 for the 1995 and 1996 tax years, respectively (hereinafter referred to as “Lot 1”). Taxpayer also owns the adjacent Lot 5 and Lot 6, consisting of approximately 7 acres.
Taxpayer sought farmland assessment treatment for the 1995 and 1996 tax years for all three parcels, asserting that they were “actively devoted” to honey production since 1993. At that time, nine or ten hives were placed on a small northerly portion of Lot 6, near the property line of Lot 7, and cared for by a professional beekeeper. In addition, once a year in 1994, 1995 and 1996, taxpayer’s caretaker seeded Lot 1 with clover. The assessor denied the 1995 and 1996 applications for farmland assessment for all three parcels and the county board reversed and qualified that portion of Lot 6, not attributable to the residence, and Lot 5, as farmland. Taxpayer appealed the board’s decision with respect to Lot 1 to the Tax Court.
*546 Bee raising and honey production constitute a proper classification for farmland assessment under the express language of N.J.S.A. 54:4-23.3: “and shall be deemed to be in agricultural use when devoted to the production for the sale of ... bees and apiary products; ...” Taxpayer must also satisfy other statutory criteria for the reduced property tax assessment. N.J.S.A. 54:4-23.5, - 23.6. The municipal attorney stipulated that Lot 1 met the income and acreage requirements of the statute. The case was tried on the sole issue of whether Lot 1 was “actively devoted to agricultural or horticultural use” or, in the alternative, “legally and functionally” part of taxpayer’s farm under the Farmland Assessment Act. Although the court queries whether it can accept the stipulation as to gross sales of honey attributable to Lot 1 insofar as there are no bee hives on the subject parcel, this issue need not be addressed in this case.
“[T]he Farmland Assessment Act is akin to tax exemption statutes which must be strictly construed against the party claiming the exemption . . . .” Borough of Califon v. Stonegate Properties, Inc. 2 N.J.Tax 153, 163 (1981). The taxpayer has the burden of proof to establish qualification for farmland assessment. Miele v. Jackson Tp., 11 N.J.Tax 97, 99 (App.Div.1989); Cherry Hill Indus. Properties v. Voorhees Tp., 186 N.J.Super. 307, 312, 452 A.2d 673 (App.Div.), aff'd as modified on other grounds, 91 N.J. 526, 453 A.2d 850 (1982); Wishnick v. Upper Freehold Tp., 15 N.J. Tax 597, 606 (1996). Since the Monmouth County Board of Taxation affirmed the denial of farmland assessment by the assessor, a presumption of validity attaches to that determination. The county board judgment cannot be overturned until taxpayer has produced sufficient competent evidence, “definite, positive, and certain in quality and quantity to overcome the presumption.” Byram Tp. v. Western World, Inc., 111 N.J. 222, 235, 544 A.2d 37 (1988), quoting Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952).
Taxpayer asserts the planting of clover and the existence of trees on the property constitute a sufficiently affirmative act to satisfy the requirement of active devotion to an agricultural or *547 horticultural use and qualify for the benefit of a reduced property tax assessment under Barrett v. Borough of Frenchtown, 6 N.J.Tax 558 (1984). The beekeeper testified that the clover is important for pollination and improves the quality of honey and that the species of trees are also sources of nectar. No proofs were presented, however, that taxpayer planted the trees or in any way maintained them.
According to the expert, although bees can fly up to six to seven miles, they usually forage at the closest nectar source within one-half mile. The bees collect the liquid from the flower, alert the other bees in the hive to its location and sweetness, and return to the same hive each day to store the honey, which has been filtered in their bodies from the nectar, in the cells of the hive. Although the expert conceded that he never tracked any of the bees from Lot 6 to see where they went, he concluded that they used Lot 1 for honey-making because it was close to the hives. In addition, taxpayer placed five photographs into evidence, including a closeup of the clover on Lot 1. None showed any bee activity on that parcel. Furthermore, there was no testimony as to the amount of land necessary to support the honey production of taxpayer’s off-site bees or that the bees needed the quality or quantity of the clover on the 6.33 acres of Lot 1. Nor did the beekeeper quantify his net opinion by any study or empirical data to prove that honey production would decrease if Lot 1 were paved over with blacktop. The beekeeper’s only response was that common sense would dictate that if anything blooming were killed, the production would drop because the bees would have to fly to other lots.
The most significant flaw in taxpayer’s position is that Lot 6, where the hives are situate, and the adjacent Lot 5, have the same nectar sources as Lot 1. In fact, the beekeeper candidly admitted that the open meadows (7.1 acres of Lots 5 and 6) are more attractive to bees than the wooded parcel (Lot 1). In addition, Lot 7, which is adjacent to the hives, and Lots 2 and 4 which are closer to the hives than the subject property, have the same kinds of nectar-producing trees as Lot 1.
*548 I find taxpayer has faded to sustain his burden of proof that Lot 1 is “actively devoted” to the production of honey as intended by the Legislature in its enactment of the Farmland Assessment Act. The clover was not planted until 1994 and taxpayer presented no evidence whatsoever of any activity on the subject lot in 1993; therefore, he has failed to satisfy the two-year statutory requirement for the 1995 appeal. N.J.S.A. 54:4r-23.6(a). In addition, the planting of clover is insufficient for farmland qualification for the 1996 tax year. Although the bees from Lot 6 may gather some nectar from the clover on Lot 1, it is as likely that they also forage on Lots 5, 6, 7, 2, and 4 and the surrounding countryside. Moreover, there has been no testimony that the 6.33 acres of Lot 1 are needed for the honey production or that the amount of honey produced would decrease in any way if Lot 1 had no clover and was not suitable for foraging by taxpayer’s bees. As such, I conclude, based on the record in this case, like the farm in the Barrett case, that the contribution of Lot 1 to the production of honey by the bees from Lot 6 is unknown.
In the alternative, taxpayer submits that Lot 1 is “legally and functionally” part of his farm and if not, is woodland “appurtenant to and reasonably required to maintain” his farm. N.J.A.C. 18:15-6.2(a)(6); Wiesenfeld v. South Brunswick Tp., 166 N.J.Super. 90, 398 A.2d 1342 (App.Div.1979); Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976). Neither law nor logic supports this position. The Andover ease dealt with an uncultivated part of a farmland tract, i.e., woodland, swampy areas, and rocky terrain, which had been part of the farm and considered as such for many years and had no independent productive use. Such land had marginal value for agricultural or horticultural use but had been legally and functionally part of a qualifying farm and, as such, was entitled to receive the same preferential treatment. In a subsequent decision, the Appellate Division explained that the holding in Andover applied “only where the disputed woodland is both legally and functionally part of the qualifying farm in question.” Wiesenfeld, supra, 166 N.J.Super. at 94, 398 A.2d 1342. The court distinguished the *549 Andover rationale and denied farmland assessment to “contiguously owned, separately acquired woodland which has never functionally been part of the farm, [and] which has not been integrated with it in any documentary manner . . . .” Id. at 94-95, 398 A.2d 1342. The Appellate Division clearly set forth its “view that where the woodland in question is not ‘part’ of the farm within the rational [sic] of Andover, supra., it can, if contiguous to the farm, qualify for the farmland assessment only if proved to be both appurtenant thereto and reasonably required for its maintenance.” Id. at 95, 398 A.2d 1342 (emphasis added).
Since Lot 1 is appurtenant to the qualifying farmland, taxpayer must prove that it is both legally and functionally part of the apiary use, consists of marginal land area, and is reasonably required for the maintenance of the qualifying parcels. Legally, the parcels are separate tax line items, with no evidence presented that they have been integrated in any documentary manner. Functionally, they have separate and distinct physical characteristics and purposes: Lot 6 consists of a landscaped residence, along with a manicured lawn and meadow which extends to Lot 5, while Lot 1 is predominantly wooded. It appears to the court, consistent with the assessor’s interpretation, that the only entity formed by the three parcels is an estate, with the wooded area of Lot 1 creating a privacy barrier to Navesink River Road, to which there is no access. There is no integration of beekeeping or honey producing functions between Lot 6, where the hives are situate and honey gathered, and the subject lot. All taxpayer did on Lot 1 was plant clover annually and mow it at the same intervals as prior to the seeding.
The proofs do not indicate that Lot 1 is marginal, untillable, land with no independent productive use. To the contrary, counsel for the taxpayer emphasized with testimonial and documentary evidence that there was sufficient room between the trees for clover to grow. No one testified that the only use of Lot 1 was as a primary nectar source for the bees from Lot 6. The parcel was capable of being agriculturally productive; trees could have been cut and sold for firewood, clover could have been cut and used as a *550 component of hay, or a forage crop or some other cash crop could have been planted in its stead.
As previously discussed, Lot 1 is not reasonably required for, nor beneficial to, the maintenance of the beehives and honey production. The woodlands and clover on Lot 1 do not “enhance[ ] the use of other land devoted to agricultural or horticultural production by providing benefits . . . . or other recognizable enhancements of the viability of the qualifying land.” See N.J.A.C. 18:15-1.1 (providing definition of “Beneficial to a tract of land”). The clover on Lot 1 is not reasonably required to maintain the beehives located on the other side of Lots 5 and 6 containing seven acres, particularly with the same types of nectar sources available in closer proximity to the hives. The record in this case does not support taxpayer’s claim that Lot 1 qualifies for farmland assessment in 1995 and 1996 as legally and functionally part of the qualifying farm or as appurtenant woodland.
As taxpayer has not borne his burden of proving that Lot 1 qualifies for farmland assessment under N.J.S.A. 54:4-23.1 to - 23.23, the judgments entered by the county board will be affirmed. The Tax Court Administrator will enter judgment accordingly.