KUSKIN, J.T.C.
This matter is before the Tax Court on remand from the Appellate Division. Van Wingerden v. Lafayette Tp., 303 N.J.Super. 614, 697 A.2d 565 (App.Div.1997). The matter was originally tried before the Hon. Maureen Dougherty J.T.C., who issued a written opinion. Van Wingerden v. Lafayette Tp., 15 N.J.Tax 475 (Tax 1996). The primary issue was plaintiffs claim of exemption from local property tax under the Farmland Assessment Act, N.J.S.A. 54:4-23.1 to -23.23, for his greenhouse. Specifically, plaintiff relied upon N.J.S.A 54:4-23.12(a), as amended by L. 1993, c. 251, § 1. This statute provides in relevant part, that “structures, which are located on land in agricultural or horticultural use” are subject to local property tax assessment in the same manner as “other taxable structures,” but:
the term “structures” shall not include “single-use agricultural or horticultural facilities.” As used in this act “single-use agricultural or horticultural facility” means propei'ty employed in farming operations and commonly used for either storage or growing, which is designed or constructed so as to be readily dismantled and is of a type which can be marketed or sold separately from the farmland and buildings and shall include, but not be limited to, ... readily dismantled silos, greenhouses, grain bins, manure handling equipment, and impoundments, but shall not include a structure that encloses a space within its walls used for housing, shelter, or working, office or Sales space, whether or not removable.
[N.J.S.A. 54:4-23.12(a).]
Judge Dougherty found that the subject greenhouse could be “readily dismantled” and, therefore, qualified for exemption. She held, however, that the exemption granted by the statute was unconstitutional. The Appellate Division reversed Judge Dougherty’s determination of unconstitutionality and remanded the matter to the Tax Court.
The Tax Court, judge found that plaintiff’s greenhouse was exempt____
The judge, however, did not address the Township’s argument before us that the greenhouse is not exempt because a portion of the structure “encloses a space within its walls used for ... office or sales space....” Consequently, we remand for reconsideration as to whether plaintiff’s greenhouse is an exempt structure under the statute.
[Van Wingerden v. Lafayette Tp., supra, 303 N.J.Super. at 619, 697 A.2d 565.]
The Appellate Division did not retain jurisdiction.
In response to the remand, Judge Dougherty, in a bench opinion rendered on April 30, 1998, noted that the Appellate *85 Division did not have the benefit of the Supreme Court’s decision in General Motors Corp. v. Linden, 150 N.J. 522, 696 A.2d 683 (1997), then concluded that under General Motors her determination of unconstitutionality was correct, and, therefore, declined to make any finding pursuant to the instructions of the Appellate Division. Judge Dougherty commented:
Because the exemption under [N.J.S.A.] 54:4-28.12 as applied to taxpayer’s greenhouse is void there’s no need to address the issue of whether the greenhouse is fully exempt, notwithstanding that a portion of the structure “might be determined to enclose the space within its walls used for office or sales space.”
In response to this decision, the Appellate Division entered an Order on September 25, 1998 again remanding the matter to the Tax Court “for findings of fact as required by this court’s original opinion.”
Judge Dougherty resigned from the Tax Court effective April 30, 1998, and the remand was assigned to me. I convened a telephone conference with counsel for plaintiff and defendant, as well as the Deputy Attorney General assigned to the matter (the Attorney General of New Jersey had intervened in the Tax Court proceedings and was granted permission to intervene by the Appellate Division in its September 25, 1998 Order). In such telephone conference, the Deputy Attorney General declined to participate in the remand proceedings. A confirmatory letter stated the Attorney General’s position as follows: “Throughout this litigation, my office’s participation has been limited to the issue of the constitutionality of the single use facility statutory provisions. Because the factual issues currently pending before the Tax Court do not involve this issue, there is no need for us to be involved at this time.”
I requested counsel for plaintiff and defendant to specify the pox’tions of the trial transcript, exhibits, and briefs which I should consider in connection with the remand, and their joint response was set forth in a letter dated November 12, 1998. After reviewing the designated portions of the transcript, exhibits, and briefs, and such other portions as I deemed appx’opriate, I determined that I requix-ed additional information as to the physical relationship between the main greenhouse and the shipping house. Their *86 functional relationship was adequately described in the record. Pursuant to my request, counsel prepared a detailed drawing of the entire structure. This document, which includes comments by each party, was marked in evidence as Exhibit JR-1.
The issue on remand, as originally defined by the Appellate Division, was whether the subject greenhouse facility was disqualified from exemption because it “encloses a space within its walls used for ... office or sales space.... ” After inquiry by counsel, the Appellate Division amended the remand instruction to conform to the language of N.J.S.A. 54:4-23.12(a), and required the Tax Court to consider whether the greenhouse was not exempt because it “encloses a space within its walls used for ... working, office or sales space” (emphasis supplied).
The following facts, many of .which are contained in Judge Dougherty’s opinion, Van Wingerden v. Lafayette Tp., supra, 15 N.J.Tax at 481-85, are relevant to a consideration of the issue before me. The main greenhouse is 315 feet, 8 inches long and 207 feet, 6 inches wide. The shipping house has dimensions of 69 feet, 9 inches in width by 21 feet in depth. The structure of the shipping house is integrated with that of the mam greenhouse, and a portion of the front wall of the mam greenhouse constitutes the rear wall of the shipping house. Sliding doors ten feet in width are installed in the common wall, and provide the only access between the two sections of the structure. The only physical differences between the shipping house and main greenhouse are: 1) the shipping house exterior consists of fiberglass panels rather than the glass panels which constitute the exterior of the main greenhouse; and,2) the floor of the shipping house is concrete while the floor of the main greenhouse is native soil except for a concrete walkway 8 feet in width by 315 feet in length extending from the sliding doors in the common wall to the rear of the main greenhouse.
The main, greenhouse is used for the growing of flowers, primarily’roses, anthuriums, and snapdragons. An area within the main greenhouse, extending the entire width of the structure to a depth of approximately thirty feet from the common wall, is used for *87 storage of equipment employed in the horticultural operations in the main greenhouse.
The shipping house contains the machinery and equipment used to operate the main greenhouse. This equipment includes boilers and pumps providing heat to the main greenhouse, a water tank, controls for the main greenhouse heat shield which deflects direct sunlight in the summer and provides insulation in the winter, controls which open and close glass panels in the roof of the main greenhouse to provide ventilation, and controls for a centralized watering system servicing the main greenhouse. Also located in the shipping house are: tables used to grade and sort flowers after they are harvested; a refrigerated cool box approximately 10 feet by 15 feet, and approximately 10 feet in height, which is used to store flowers after they have been graded and sorted; a desk approximately 3 feet by 5 feet with one chair; a cordless telephone; a small workbench; and a tool storage area. The desk is used only for limited paper work such as preparing a bill or invoice for a customer or writing down a telephone order. No office staff is located in the shipping house. The office facility for Mr. Van Wingerden’s horticultural business is located in his house, where he maintains his business records, tax records, and billing records, pays bills, and does bookkeeping. This office also contains filing cabinets, a computer, a copy machine, and other necessary business equipment.
As flowers mature they are cut, generally every morning. The cutting process involves use of a cart containing buckets of water. The cart is wheeled on the eight foot wide concrete walkway in the main greenhouse. As the flowers are cut, they are placed in the buckets. After the buckets are filled, the cart is returned to the shipping house where the flowers are graded and sorted on the tables described above, and then placed in bundles usually containing twenty-five flowers each. The bundles are placed in buckets containing a chemical preservative solution, and the buckets are placed in the cool house to await delivery to, or pick-up by, customers. Mr. Van Wingerden sells primarily to florists and florist distributors. Florists within approximately thirty minutes *88 driving distance generally come to the greenhouse to pick up then-orders, and others receive deliveries from Mr. Van Wingerden. Some distributors pick up then- orders from the greenhouse, and Mr. Van Wingerden deliyers to others.
Mr. Van Wingerden makes no effort to encourage retail business. He does not advertise for such business, and neither the shipping house nor the main greenhouse contains an area for display of flowers. The driveway from Route 206 to the greenhouse is approximately 1,000 feet in length. The greenhouse is not visible from the highway, and no sign or advertising is located at or near Route 206 to attract customers onto the site. Retail sales constitute less than one percent of the total business. Retail customers are generally friends or acquaintances of Mi-. Van Wingerden, and people who make deliveries to the premises.
No sales staff is employed at the greenhouse. When regular customers come to the greenhouse to pick up their orders, neither Mr. Van Wingerden nor any employee is needed to provide assistance. Mr. Van Wingerden writes the invoice for the particular florist or distributor, places it in a clipboard next to the door to the cool house, and places the order in a bucket or buckets with an identifying tag. The florist or florist distributor signs the invoice, retains one copy, then enters the cool house and removes the flowers that have been set aside for that order. The occasional retail customer must get the attention of someone wor-king in the main greenhouse or shipping house in order to purchase flowers.
The meaning of the phrase “working, office or sales space” as used in N.J.S.A. 54:4-23.12(a) is not clear from the words themselves or them context, nor has the phrase been defined in any reported court decision. “[W]hen [a] statute’s plain language creates ambiguities, courts must interpret the statute in a manner consistent with the legislative intent.” County of Camden v. South Jersey Port Corp., 312 N.J.Super. 387, 396, 711 A.2d 978 (App.Div.1998) (citation omitted). Consequently, in interpreting the phrase “working, office or sales space”, resort to legislative history is appropriate.
*89 The exemption for greenhouses contained in N.J.S.A. 54:4-23.12(a) was added by L. 1993, c. 251, § 1, the enactment of Senate Bill No. 15. The News Release issued by the Office of the Governor when S.15 was signed into law states that the legislation incorporated recommendations contained in a Report (the “Report”) dated January 18, 1993 prepared by the New Jersey State Board of Agriculture entitled “Agricultural Economic Recovery and Development Initiative.” The Report began with the following comment;
“The effects of the current recession, the unintended consequences of policies at the state and local levels and the liigh costs of farming in an urban setting have imposed great stress on farmers and brought many of them to the point of financial crisis. Unless the crisis is effectively dealt with, agricultural sector jobs will be jeopardized, erosion of the farmland base may accelerate and the long-term viability and competitiveness of New Jersey agriculture will be at slake.”
[Id. at 1.]
The Report contained numerous recommendations to address the crisis it described, including the following:
“8. Adopt specific measures for tax and regulatory relief to reduce production costs attributable to public policies.
—Property tax relief. Taxes paid by New Jersey farmers are higher than in competing states even with farmland assessment. There is an immediate need to:
a) Exempt from property taxation certain farm buildings and single purpose structures ...”
[Id. at 11.]
The version of S.15 prefiled for introduction in the 1992 Legislative Session was consistent with the recommendation of the Report in providing an exemption from property taxation for “singieuse agricultural or horticultural facilities.” The Statement attached to the Bill described the facilities eligible for exemption as having “only agricultural value.” The June 1, 1992 Senate Community Affairs Committee Statement to S.15 stated:
This bill would further expand I the exemption for seed starting plastic greenhouses'] by extending it to other property employed in farming operations and commonly used for either storage or growing, which may be dismantled and sold separately from the farmland and buildings. These include but are not limited to silos, greenhouses, grain bins, manure handling equipment and impoundments. Specifically excluded from this exemption are structures that enclose a space within walls used for housing, shelter, or working, office or sales space, whether or not removable.
*90 The Senate Budget and Appropriations Committee Statement to the Bill, dated March 18, 1993, includes the following language:
This bill expands the exemption by extending it to other property employed in a farming operation which may be dismantled and sold separately from the farmland and buildings. This property includes silos, greenhouses, grain bins, manure handling equipment and impoundments.
Structures that are used for housing, shelter, or working, office or sales space, whether or not removable, are not exempted.
As set forth above, the initial portion of N.J.S.A. 54:4-23.12(a) provides for taxation of structures “located on land in agricultural or horticultural use,” but exempts “single-use agricultural or horticultural facilities,” which the statute defines as “property employed in farming operations and commonly used for either storage or growing, which is designed or constructed so as to be readily dismantled and is of a type which can be marketed or sold separately from the farmland and buildings.” The Farmland Assessment Act contains no definition of the terms “farming operations,” “storage” or “growing.” The architecture of N.J.S.A. 54:4-23.12(a), however, in effect defines “farming operations” as “agricultural or horticultural use” of land and buildings.
N.J.S.A. 54:4-23.3 defines “agricultural use” as devotion “to the production for sale of plants and animals useful to man____” N.J.S.A. 54:4-23.4 defines “horticultural use” as devotion “to the production for sale of fruits of all kinds, including grapes, nuts and berries; vegetables; nursery, floral, ornamental and greenhouse products; ....” N.J.A.C. 18:15-6.2(a)(l) defines the phrase “devoted to agricultural use” (see N.J.S.A. 54:4-23.5) as including land “[o]n which crops are grown for market, either retail or wholesale.” The inclusion of the phrases “production for sale” and “grown for market, either retail or wholesale” in these definitions indicates that an agricultural or horticultural use encompasses making crops ready for sale, including storage pending sale. Under N.J.S.A. 54:4-28.12(a), therefore, the sale in or from a structure, otherwise qualifying for exemption, of agricultural or horticultural crops does not, in itself, preclude qualification for exemption, and the structure will lose such qualification only if it encloses “sales space” within the meaning of the statute.
*91 The statutory designation of specific structures as qualifying for exemption, and the designation of disqualifying “space” provide additional indications of legislative intent. The structures expressly qualifying for exemption, namely, “silos, greenhouses, grain bins, manure handling equipment, and impoundments,” are commonly used only for agricultural or horticultural purposes. The “space” enclosed by such a structure which the statute specifies as disqualifying the structure from exemption, namely, space used for “housing, shelter, or working, office or sales space,” is not used for a purpose or function inherent to an agricultural or horticultural use, but for a function or purpose only ancillary to such a use.
Based on the preceding discussion of the legislative history of L. 1993, c. 251 § 1, and the language of the statute, I conclude that the Legislature intended to provide property tax relief only for structures which can be readily dismantled, and which are integral to, and used entirely for, functions or purposes essential and inherent to .the growing or storage of agricultural or horticultural crops. As discussed above, “growing or storage” includes making crops ready for sale. Making a crop ready for sale does not include altering the raw state of the crop by activities such as processing or transforming the crop into an end product, for example, baking apple pies, producing cranberry sauce or juice, or preparing floral displays. A structure used partially for functions or purposes not essential and inherent to the growing or storage of agricultural or horticultural crops is not “single-use,” and, therefore, does not qualify for tax exemption.
In applying the preceding analysis to the facts before me, I will treat the shipping house and main greenhouse as one structure, which, in its entirety, either qualifies or does not qualify for exemption under N.J.S.A. 54:4-23.12(a). The shipping house and the main greenhouse are structurally and functionally integrated. The facilities and equipment located in the shipping house are essential for, and have utility only as part of, the operations which take place in the main greenhouse. Even if the shipping house, as an independent building, would not qualify as a “greenhouse” *92 within the meaning of N.J.S.A. 54:4-23-12(a), the shipping house, as constructed and used by Mi*. Van Wingerden, constitutes part of a greenhouse.
The structural and functional integration of the shipping house with the main greenhouse is analogous to the integration of woodland and wetlands with acreage on which crops are grown.
Woodland, wet areas and other acreage having a marginal value for agricultural or horticultural use may also be given [farmland tax treatment], as long as it is part of, appurtenant to, or reasonably required for the purpose of maintaining, the land actually devoted to farm use, particularly where it has been part of the farm for a number of years.
[Andover Tp. v. Kymer, 140 N.J.Super. 399, 403, 356 A.2d 418 (App.Div.1976).]
See also N.J.A.C. 18:15-1.1 which defines “[s]uppoi*tive and subordinate woodland” as “a wooded piece of property which is beneficial to or reasonably required for the purpose of maintaining the agricultural or horticultural uses of a tract of land, ____” The shipping house, in relation to the main greenhouse, fulfills all of the criteria set forth in Andover Tp. v. Kymer, supra. The shipping house is part of the main greenhouse, is reasonably required for the purpose of maintaining the main greenhouse, and was constructed simultaneously with and as part of the main greenhouse.
I now turn to the issue of whether the Van Wingerden greenhouse (shipping house plus main greenhouse) encloses space used for “working, office or sales space” within the meaning of N.J.S. A. 54:4-23.12(a). I will consider first the term “sales space,” then “office space,” and, finally, “working space.”
Under the statutory interpretation set forth above, an area in the greenhouse used for a function or purpose not essential and inherent to the growing or storage of flowers, such as space used for the sale of flowers, floral displays, flower pots, vases, or other merchandise or services, would constitute disqualifying “sales space.” The Van Wingerden greenhouse contains no such space. No portion of the greenhouse is used for the sale of flowers or any other merchandise or service. Mr. Van Wingerden employs no sales personnel. The cool house functions not as a sales or display *93 area, but as a facility for storage of flowers between harvest and disposition. Sales do occur in the greenhouse, but N.J.S.A. 54:4-23.12(a) prohibits sales space, not the sales themselves. The Van Wingerden greenhouse contains no “sales space” as such term is used in the statute.
The single desk located in the shipping house does not constitute “office space.” As described above, the office operations associated with the greenhouse business are at Mr. Van Wingerden’s home. The desk in the shipping house serves only as a place to write a bill or invoice or record a telephone order. The desk is not an office, and the space it occupies is not “office space.”
Remaining for consideration is whether the greenhouse encloses “working space.” Defendant contends that the concrete walkway in the main greenhouse used for access to the growing flowers, and the work tables in the shipping house used for grading and sorting of flowers, constitute “working space” within the meaning of N.J.S.A. 54:4-23.12(a). I reject this contention. The work performed on or from the walkway consists of planting, maintenance, and harvesting of flowers. The work performed at or on the work tables consists of grading and sorting of flowers, placing them in buckets containing a preservative solution, and then placing the buckets in the refrigerated cool house. All of this work is essential and inherent to the growing and storage (as defined above) of the flowers. The work is no different from picking strawberries, segregating them by grade or quality, placing different grades and qualities in different baskets or boxes, and then placing the baskets or boxes in a refrigerated storage area until sale and delivery to customers.
Defendant also contends that the storage area 30 feet deep by 207 feet wide located in the main greenhouse constitutes “working space .” I reject this contention. This storage area contains equipment used in the growing and harvesting of flowers. Other than the removal and return of equipment to the storage area, and performance of maintenance work on the equipment, no “work” is performed in this area. The area is used for a function *94 or purpose essential and inherent to the horticultural use of the main greenhouse, and does not corrupt the “single-use” of the structure for the growing of flowers.
Under the interpretation of N.J.S.A. 54:4-23.12(a), set forth above, the term “working space” refers to space used for functions or purposes not essential and inherent to growing or storage of crops. Accordingly, space in either the main greenhouse or shipping house used for activities such as preparing floral displays or processing flowers would be disqualifying “working space” within the meaning of the statute. Such activities would not be essential and inherent to the growing or storage of the flowers. The work performed on or at the walkway in the main greenhouse and on or at the work tables in the shipping house, and the use of the storage area in the main greenhouse are all essential and inherent to the growing and storage of flowers, including mailing the flowers ready for sale. Neither the shipping house nor the greenhouse, therefore, contains any “working space” which would preclude exemption under the statute.
In summary, the shipping house and main greenhouse constitute a single “greenhouse” structure under N.J.S.A. 54:4-23.12(a). This structure does not contain “working, office or sales' space” as such terms are used in the statute. The Farmland Assessment Act must be strictly construed against the party seeking the tax benefits of the Act, because those benefits are generally equivalent to an exemption, and, here, the benefits would be an exemption. Wishnick v. Upper Freehold Tp., 15 N.J.Tax 597, 606 (Tax 1996). Consequently, plaintiff bears the burden of establishing that his greenhouse qualified for exemption from taxation under N.J.S.A. 54:4-23.12(a). Based on the preceding analysis, he has done so.
As noted above, the Appellate Division did not retain jurisdiction of this matter. Accordingly, as a result of: (1) the Appellate Division’s determination that the exemption granted by N.J.S.A. 54:4-23.12(a) is constitutional, (2) Judge Dougherty’s finding, undisturbed by the Appellate Division, that the plaintiffs greenhouse could be readily dismantled, and, (3) my conclusion that the *95 greenhouse does not contain “working, office or sales space” which would disqualify it from the exemption, I will instruct the Tax Court Management Office to issue amended Judgments granting such exemption and reducing the assessment on the subject property for each of the years under appeal to $268,000, allocated $52,500 to land and $215,500 to improvements. See Van Wingerden v. Lafayette Tp., supra, 15 N.J.Tax at 480 (identifying the portion of the original assessment allocated to the greenhouse).